David L. Kurtz - 007433
**The Kurtz Law Firm**
7420 East Pinnacle Peak Road, Suite 128
Scottsdale, Arizona 85255
Telephone: (480) 585-1900
dkurtz@kurtzlaw.com

Michael J. O'Connor - 010399
**Jennings, Strouss & Salmon, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5889
moconnor@jsslaw.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| LEROY and DONNA HAEGER, husband and wife; BARRY and SUZANNE HAEGER, husband and wife; FARMERS INSURANCE COMPANY OF ARIZONA, an Arizona corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>GOODYEAR TIRE AND RUBBER COMPANY, an Ohio corporation; SPARTAN MOTORS, INC., a Michigan corporation; and GULFSTREAM COACH, INC., an Indiana corporation,<br><br>Defendants. | CV05-2046-PHX-ROS<br><br>**PLAINTIFFS' MOTION FOR SANCTIONS FOR DISCOVERY FRAUD** |

**I.     INTRODUCTION**

Discovery in this case was focused upon the design suitability of the G159 for high-speed applications. Goodyear test records represent the heart of the defective design analysis. Goodyear repetitively represented to the Court and counsel that all existing test records were disclosed. Goodyear lied.

Plaintiffs have recently discovered that Goodyear knowingly concealed crucial "internal heat test" records related to the defective design of the G159. Goodyear has admitted such deception, but claims it was entitled to withhold test data, in

spite of its repetitive representations to the Court and the Plaintiffs that all test records had been disclosed.  This deception caused Plaintiffs' counsel to expend countless hours, spanning a period of years, and yet to be quantified expense building and presenting to the Court their case based upon a mere fraction of the truth regarding the G159, relying upon the just expectation that discovery obligations and this Court's orders would be followed.  Instead, Plaintiffs were taken on an expensive frolic, while only Goodyear knew that it had concealed crucial test records.  Now, Goodyear claims that concealing test records was both allowed and appropriate.  The record defies Goodyear's assertion of its entitlement to engage in abusive litigation tactics and discovery fraud.

This motion sets forth the background and knowing nature of Goodyear's deception, its fraudulent discovery responses, its multiple misrepresentations to the Court regarding disclosure of all test data, the willful misrepresentations of Goodyear's 30(b)(6) witness relating to test data and the architecture employed by Goodyear, which enabled it to keep the true existence of such test data a secret.  The motion provides the foundation for Plaintiffs' request that this Court exercise its inherent powers and discretion to enter appropriate sanctions for Goodyear's failure to comply with this Court's orders relating to disclosures, its willful deceptions and multiple misrepresentations.

**II.    BACKGROUND**

This case is only one of dozens of cases that were filed across the United States arising out the defective design of the Goodyear G159 truck tire.  The case was filed in June 2005 and continued until mid-April 2010, when the case was settled just prior to seating the jury.  The docket reveals that more than 900 pleadings were filed by the parties.  When the Haeger case settled, the G159 had never been through a trial resulting in a jury verdict.  Rather, Goodyear settled each case confidentially.

Historically, all the G159 cases were controlled by Goodyear's national coordinating counsel, Basil Musnuff. In his capacity as national coordinating counsel, Mr. Musnuff would orchestrate the provision of protective orders, review and approve discovery responses and participate in the preparation of Goodyear witnesses for deposition and trial. (*See* April 30, 2008 Deposition Transcript of Basil J. Musnuff, attached as Exhibit 1) Mr. Musnuff was lead counsel in this case and acted in the same capacity, controlling discovery, selecting experts and preparing Goodyear's witnesses.

In the summer of 2010, the G159 was finally fully vetted in the matter of *Shalmo v. Goodyear*, resulting in a $5.6 million verdict. The jury found that the G159 was defective in design as it was not suitable for highway use. As in this case, Goodyear was represented by Mr. Musnuff.

Like all G159 cases, the *Shalmo* matter proceeded under a protective order, which prohibited the *Shalmo* plaintiffs from "sharing" any of the documents that were disclosed by Goodyear during the course of discovery. Similarly, at the urging of Goodyear, this Court denied Plaintiffs' request to adopt a sharing provision, in conjunction with Goodyear's submittal of its protective order. Nonetheless, this Court admonished Goodyear's counsel as to the Court's just expectations:

> Every officer before this Court has an obligation to provide all relevant discovery. Perhaps the relevant discovery will relate to other cases, but if I ordered the Defendant to provide all information . . . it really would be a inquiry concerning their credibility. The rules provide for protection. The rules require, as I said, that anything is relevant must be turned over to counsel and all other parties so that proposal (the sharing provision) is denied.

(Exhibit 2, August 22, 2006 transcript of proceedings p. 10.)

The architecture implemented by Goodyear via the issuance of protective orders in all the G159 cases effectively precluded meaningful sharing of disclosures of relevant information in similar G159 motor home tire failure cases.[1]  Thus,

---

[1] The Court will recall that it encountered the same protective order in *Phillips v. Goodyear*, the matter involving the destruction of the deposition of Kim Cox,

- 3 -

reliance upon counsel's compliance with ethical obligations, court rules and orders was the sole vehicle to assure relevant documents would be disclosed. As the Court noted, "the rules provide for protection" and Plaintiffs appropriately expected that Goodyear would disclose relevant documents, particularly in light of the Court's admonition.

Subsequent to the entry of the verdict in the *Shalmo* case, counsel became aware of an article authored by Safety Research regarding the *Shalmo* trial. The article states:

> A failed Goodyear G159 was the cause of an August 11, 2004 crash that seriously injured the driver and two occupants. The tire was original equipment on a…motor home owned by John Shalmo. Shalmo was on State Road 8…when the right front tire of his motor home suffered a "catastrophic" tread separation….He died of unrelated causes two years before trial.
>
> This was the first G159 tire case to be resolved in a public trial. Goodyear has quietly settled as many as a dozen G159 tread separation cases involving serious injuries and death, in exchange for confidentiality. The Shalmo…famil[y] refused to agree to a confidential settlement and have expressed their hope that Goodyear will recall the tire.
>
> **At trial, [Plaintiffs] presented Goodyear documents, including internal heat** and speed **testing** and failure rate **data** that [Plaintiffs] argued showed that Goodyear knew the G159 was improperly approved for 75 mph continuous highway use. Excessive heat in a tire will break down its internal components over time and is a leading cause of tread belt detachment failures as typified by the *Shalmo* crash.

(*See* article entitled GOODYEAR G159 TIRE FAILURES ON RVS FINALLY DRAGGED INTO THE PUBLIC EYE, attached as Exhibit 3.)

Throughout the course of the discovery in this matter, the Plaintiffs had repetitively asked, and Goodyear had repetitively represented, that it had produced all test data regarding G159. Plaintiffs first request for production, submitted

---

Goodyear's 30(b)(6) witness. The *Phillips* case, like this case and *Shalmo*, was supervised by national coordinating counsel, Mr. Musnuff. Similarly, Goodyear refused Plaintiffs access to witness deposition and records in *Woods v. Goodyear*, seeking sanctuary behind its protective order. Each of these cases involved a tread separation of the G159 on a motor home.

- 4 -

September 22, 2006, sought "all test records for the G159 tires." (*See* Exhibit 4)[2]. Similarly, Plaintiffs' Third Request for Production sought all test records relating to the suitability of the G159 for high speed applications. (*Id.*) The only test data disclosed by Goodyear involved a 30 mph DOT required endurance test and certain high speed test records, which have been the subject of extensive discussions between the parties and the Court. The existence and disclosure of all test records was also thoroughly explored during Goodyear's 30(b)(6) deposition[3]. At no time, did Goodyear ever disclose its "internal heat" test records. Moreover, it avowed all existing test records were disclosed.

Heat is the enemy of all tires and heat test records are critical evidence relevant to the suitability of the G159 for prolonged highway use. Goodyear's experts admit that if the G159 generates heat in excess of 200°, it will lead to tread separations. Plaintiffs have now discovered that Goodyear willfully concealed its heat test records.

Plaintiffs brought this matter to the attention of Goodyear's counsel, Mr. Musnuff in January 2011, providing Goodyear with a copy of the article, which suggested the disclosure of the dissimilar testing material in the *Shalmo* case, stating, "I ask you to be direct in your response and advise whether there are any internal heat test records, as is suggested by this article, which were not produced to us in the *Haeger* case."

---

[2] Attached as Exhibit 4 are Plaintiffs' varied requests which compelled the disclosure of all test data and Goodyear's Responses.

[3] Mr. Olsen testified as Goodyear's 30(b)(6) witness. He avowed that he spoke with the engineers involved in release of the G159 and they claimed there were other high speed tests in development, but that Goodyear no longer has that data. As to other tests, Mr. Olsen avowed there are test procedures run in the development process of a new tire before it goes into production, but Goodyear does not have any of those test results. With the approval of counsel, Mr. Olsen swore that all of the tests that were in the data bases were disclosed. (*See* September 13, 2007 Deposition Transcript of Richard Olsen, attached as Exhibit 5.)

- 5 -

1    On January 13, 2011, Goodyear responded:

> [T]he fact that any particular type of information may have been ruled discoverable in the *Shalmo* case does not in any way mean that it was discoverable in the *Haeger* case…you and your clients had every opportunity to raise any and all discovery issues before the Court while the case was pending.

(*See* January 6, 2011 letter to Basil J. Musnuff from David L. Kurtz and January 13, 2011 letter to David L. Kurtz from Basil J. Musnuff, attached as Exhibit 6)

In response, on January 27, 2011, Plaintiffs again urged Goodyear's compliance, stating:

> Your letter dances around the issue, but clearly implies that different test records were in fact disclosed in *Shalmo*, which were concealed from the *Haeger* Plaintiffs.
>
> \*   \*   \*
>
> Your comment about my ability to have previously raised this with the Court is disingenuous. I cannot raise an issue about concealed data/witnesses unless I was aware that such was concealed in the first instance.

(*See* January 27, 2011 email to Basil Musnuff from David L. Kurtz, attached as Exhibit 7)

Goodyear continued to resist addressing Plaintiffs' questions and Plaintiffs maintained their insistence that a meaningful response be provided.

Plaintiffs advised Goodyear:

> Goodyear and its counsel claim that if Goodyear voices an objection to any discovery requests and then proceeds to respond that it is entitled to perpetually conceal information which was not disclosed, without regard to the applicable Rules of Civil Procedure and obligations of counsel as an officer of the Court. I could not be in greater disagreement.
>
> If your interpretation of the rule was correct, then the entire purpose of discovery would be defeated. In response to every discovery request, Goodyear incorporated no less than seventeen general objections. Based on your view of the rules, this charade would entitle Goodyear to disclose only a fraction of the truth in response to specific inquiries, as Goodyear has done, without consequences.
>
> \*   \*   \*
>
> As an officer of the Court, the first rule is that you are obligated to advance the just, speedy and inexpensive determination of every action and proceeding. Fraudulent concealment of test data is the

- 6 -

worst kind of conduct and defeats the very purpose of the rules, while shaming the profession.  Every party is entitled to reasonably rely that the parties have complied with court orders and their obligations as officers of the Court.  Similarly, the Court and parties justifiably relied upon Goodyear's representations to the Court regarding complete production of test data.

(*See* February 21, 2011 letter to Basil J. Musnuff from David L. Kurtz, attached as Exhibit 8)

Plaintiffs renewed their requests to Goodyear, asking:

1. Were there any internal heat test records or other test records regarding the G159, which were not produced in the *Haeger* case?

2. Will you provide me the test records regarding the G159, which were not previously disclosed?

3. Will you provide me the discovery responses/disclosures provided by Goodyear in *Shalmo* which address these records?

4. Will you provide me the expert reports and deposition testimony of experts and Goodyear's 30(b)(6) deponent testimony in the *Shalmo* case, which addresses the content and/or implication of these test reports?

5. Will you provide me with the trial transcript in the *Shalmo* trial?

6. Will you stipulate to lift the protective order in *Shalmo* to allow me access to such information and to discuss it directly with interested parties and witnesses?

7. Identify each G159 case where these concealed records were disclosed and those cases which requested G159 test records, where only a partial production of test records was provided.  [*Id.*]

Finally, on March 11, 2011, Goodyear made clear that it had both concealed records and that it would provide no cooperation in response to Plaintiffs' requests. Specifically, **Goodyear acknowledged, "to answer your primary question, it is true, there are testing records regarding the ...G159 tire...that were not produced in the *Haeger* litigation."**  Goodyear flatly refused to disclose what it had successfully concealed , stating:

To respond to the specific requests at the end of your February 21 letter, **Goodyear will not produce** any further **documents** to you, or **identify cases in which additional testing records were produced**.  Goodyear will not provide any **documents**, **expert reports**, **deposition transcripts or trial transcripts**

> **from** the *Shalmo* case, many of which are subject to protective orders and other orders of confidentiality entered by the Court in that case, **nor will Goodyear stipulate to the lifting of any protective order in the *Shalmo* case.**

(*See* March 11, 2011 letter to David L. Kurtz from Basil J. Musnuff, attached as Exhibit 9)

Goodyear expressed its justification for this deception as follows:

> [P]laintiffs propounded a request that Goodyear produce all testing data related to the Subject Tire. However, that did not automatically create an obligation that Goodyear produce all testing data in this case. Goodyear responded to Plaintiffs' request by objecting to the scope of the request on several good faith grounds. The same holds true for Plaintiffs' interrogatory concerning testing.
>
> …Plaintiffs did not file a motion to compel challenging Goodyear's objection to Plaintiffs' discovery requests for all testing data regarding the subject tire. Furthermore, there was no self-actuating duty to disclose any further testing data under the Federal Rules of Civil Procedure. Nor, did Goodyear fail to comply with any duty to supplement its discovery responses. Again, Goodyear maintained its objection to the scope of Plaintiffs' discovery requests and that objection was never overruled. [Id.]

In its most simple form, Goodyear claims that when it responds to discovery requests if it also incorporates any objection, then it need not provide a complete response, need not supplement its responses and need not tell anyone if it is withholding responsive requested documents or concealing the identity of witnesses.

It is one thing if Goodyear refuses to answer a question and asserts a good faith objection. In such a case, the burden is appropriately upon Plaintiffs to seek an order of the Court to compel an appropriate response. It is quite another thing when Goodyear answers the discovery requests even though the response includes an objection. In such a circumstance, the Plaintiffs are misled that the responsive information is being disclosed and Goodyear is simply preserving objections. Such deception is complete when Goodyear's only witness swears there were no other test records, as happened in this case.

- 8 -

1    Perhaps, more significant is Goodyear's suggestion that it could conceal
2 relevant test data in a defective design product liability case.  There is simply no
3 objection to discovery requests for this crucial test data, which could ever be voiced
4 in good faith.

## III.   GOODYEAR WILLFULLY MISLED THE COURT THAT IT DISCLOSED ALL RELEVANT TEST DATA.

On April 6, 2007, the following exchange took place between the Court and Goodyear's counsel.

> **Question:**  Is there any internal documentation that is available that has been requested that your clients have not provided?
>
> **Answer:**  We have responded to all outstanding discovery…if a document shows up, we will, of course, produce it and supplement our answers, but I think we are done or nearly done.
>
> **Question:**  And your client has provided certification as is required by the rule?
>
> **Answer:**  Correct.

(*See* Transcript of April 6, 2007 Proceedings pp. 11-12, attached as Exhibit 10A.)

On May 17, 2007, the following exchange took place between Goodyear's counsel and the Court.

> **Question:**  Are there any tests that are available to show that this tire was tested for speeds above 30 mph?
>
> **Answer:**  Yes.
>
> **Question:**  And have they been produced?
>
> **Answer:**   No…they have been requested in a request for production that arrived at my office last week where the discovery response is due mid-June…they will be produced at that time.

(*See* Transcript of May 17, 2007 Proceedings, p. 48, attached as Exhibit 10B.)

Moreover, on October 19, 2007, counsel for Goodyear specifically advised the Court:

> [Plaintiffs] discovery request is what did you rely on to tell the public that this tire could go 75 mph?  All of that testing has been produced.  This tire goes out for sale and we produced all of the testing on any tire that was the same as any of the tires for sale.

(*See* Transcript of October 19, 2007 Proceedings, p. 63, attached as Exhibit 10C.)

## IV. GOODYEAR'S MULTI-YEAR DECEPTION VIOLATED ITS DISCLOSURE OBLIGATIONS

Rule 26(e) states:

> The party who has made a disclosure under Rule 26(a)…must supplement or correct its disclosure…:
>
> (a) In a timely manner if a party learns that in some material respect the disclosure is incomplete or incorrect and if the additional or corrected information has not otherwise been made known to the other parties during the discovery process or in writing.

On June 7, 2007, Goodyear filed its 17th Supplemental Disclosure Statement. The pleading stated:

> Pursuant to Rule 26(a)(1)…Goodyear supplements its initial disclosure statement by disclosing the following information:
>
> (b) A copy of, or a description by category and location of all documents, data compilations and tangible things.
>
> Documents produced by Goodyear Tire & Rubber Company, Bates labeled GY-HAEGER-001961-1962 (the high speed tests).

Goodyear failed to include the internal heat tests in this disclosure, which, with its current admission, appears to have been a willful omission. Regardless, the rule required this disclosure be supplemented once Goodyear knew that the disclosure was incomplete or incorrect, secure in the knowledge that Plaintiffs were unaware of the existence of other test data. Goodyear simply ignored this obligation. It asserts it has no duty to supplement even though it knew its disclosure was incomplete.

## V. DISCUSSION

The concealment of internal heat test data is no small deception. After all, it is the generation of heat, which leads to tread separations. These tests go directly to Goodyear's state of mind and the defective design of the G159.

Goodyear's argument is that absent the Court entering an order compelling the disclosure of all test data it is able to reveal only a fraction of the tests. Goodyear claims the tests were only disclosed because the *Shalmo* court entered such an order and this Court did not. Goodyear's deception makes a mockery of the Rules of Civil Procedure and this Court's order.

The Court entered its first Rule 16.3 scheduling order in August 2006. Each scheduling order which was thereafter issued contained the same language.

> [Each] party shall finally supplement <u>all</u> discovery, including material changes and expert witness opinions and material disclosures, pursuant to FRCP 26(a)(3), of all exhibits to be used and all witnesses to be called at trial on or before _____ [the date specified by the Court in each version of the scheduling order.]
>
> …failure to timely supplement pursuant to Rule 26(e)…may result in…the imposition of other sanctions, including dismissal and the imposition of default pursuant to FRCP 37, the Local Rules of Civil Procedure of the District Court, and the inherent power of the Court.

The Court's admonition could not have been more clear nor Plaintiffs' expectation of timely, complete and honest supplementation more just.

Goodyear was to provide final supplementation by November 2007. None was provided. Goodyear sat silent for the next 2-1/2 years secure in the knowledge that it had not produced these internal heat test records, had not supplemented its discovery responses and had violated the express instruction of the Court. Knowing that Plaintiffs were wholly unaware of the existence of these heat test records, Goodyear invited Plaintiffs to expend the tremendous resources associated with the motions for summary judgment, the almost countless motions in limine and the vast quantum of time necessary to prepare this case for trial based upon a fraction of the relevant evidence.

In accord with the Court's warnings, one would have expected serious consequence if Goodyear had disclosed the internal heat tests on the very eve of trial. It certainly would have been within the Court's discretion to strike Goodyear's

answer, to enter a default, to make a substantial award of fees and costs and instruct the jury as to Goodyear's deception, amongst other discretionary alternatives. Now, having successfully concealed the evidence, Goodyear seeks to be rewarded by turning to the settlement agreement as if it was some sanctuary for its preceding, but unknown fraudulent conduct.

Plaintiffs do not seek to rescind the settlement agreement based upon Goodyear's fraudulent conduct. This Court will appreciate that before discovery of this fraud that Plaintiffs' had paid funds from the settlement to satisfy federal government Medicare liens and the remaining proceeds have been distributed. Plaintiffs do request the Court sanction Goodyear for its years of deceptive conduct.

Plaintiffs request that this Court exercise its discretion to enter an order requesting Plaintiffs to document cost and time expenditures associated with the portion of the case which relates to Goodyear's liability and that the Court subsequently enter its order returning to Plaintiffs costs and fees expended in developing their case based upon a fraction of the truth, as a result of these acts and deception.

We have given Goodyear every opportunity to disclose that which it has concealed for years. Goodyear refuses, claiming its entitlement under the *Shalmo* protective order. Considering the structure of Goodyear's argument, it is apparent why it is so insistent. There were 29 lawsuits, involving G159 tread separations on motor homes causing injuries and deaths (Exhibit 11). No doubt, all test data was requested in each case. It appears Goodyear has only disclosed all test data in one case, concealing it from the families victimized by this tire in all other cases.

Further, this is not an isolated case of discovery abuse. Goodyear was sanctioned twice during the life of this case in other matters, but remains undeterred from continued abuse of the rules. The same tactics were employed by Goodyear in *Bahena v. Goodyear*; resulting in the striking of Goodyear's answer as

a sanction. After noting Goodyear's inappropriate pattern of objections, the Court found:

> I don't know who is giving them marching orders that instead of answering interrogatories in good faith and giving real answers that they shall obstruct and object. I don't know who has created this *modus operandi* for this case. Maybe it's Mr. Goodyear himself if there is such a person, maybe it's the board of directors. Maybe the board of directors has given Goodyear absolute corporate resolution that in every case where Goodyear is sued we shall obfuscate, we shall delay, and we shall impede. So I consider it to be severe….I find it appalling.
>
> \*   \*   \*
>
> attorneys don't do these things without authorization from the client…the need to deter parties and future litigants from similar abuses…is an overpowering need, that is huge.

(Exhibit 12, January 18, 2007 Transcript of proceedings in *Bahena v. Goodyear*, Clark County District Court, Nevada.)

Similarly, Goodyear was sanctioned in *Ruiz v. Goodyear* by Judge Harrington, of the Pima County Superior Court, who found:

> One example of concern in this matter is the objections that have been stated by Goodyear in responses to written discovery. In addition, to lengthy "general objections," defendant Goodyear has regularly interposed multi page objections to requests for discovery….Goodyear has so narrowly construed the discovery requests and disclosure rules that it has frustrated both the letter and spirit of the rules. In fact, as pointed out in Plaintiffs' motion, Goodyear has not produced documents because Goodyear has unilaterally decided that the documents are neither relevant nor reasonably calculated to lead to discovery of admissible evidence, even when that interpretation or conclusion is not justifiable….Sanctions against Goodyear are appropriate and overdue.

(Exhibit 13, October 25, 2006 Minute Entry in *Ruiz v. Goodyear*, Pima County Superior Court Case No. 20050420.)

This ongoing pattern of discovery abuse must stop. Although it is too late for the Haeger's to have their day in Court based upon the merits, it is not too late for this Court to address and sanction this prohibited conduct.

## VI. CONCLUSION

The Court has authority for issuance of sanctions pursuant to Rule 16(f), (allows sanctions to be assessed to punish improper conduct for purposes of deterrence or to compensate the injured party for improper conduct,) Rule 26(g), (sanction for improper certification re discovery responses,) 37(b), (failure to comply with Court order,) and 37(c) (failure to supplement discovery responses.) Plaintiffs request the Court exercise its discretion and award appropriate sanctions to deter and punish Goodyear for discovery misconduct which has become a pattern and practice of this corporation, (in spite of prior sanctions) and to award fees and costs Plaintiffs unnecessarily expended at Goodyear's invitation, preparing a case based upon deceptive disclosures.

This fraud was knowingly orchestrated by Goodyear's national coordinating counsel for the G159 cases. He admits this was no mistake and a calculated deception. The failure to award sanctions would provide the final reward for reprehensible unethical conduct in defiance of this Court's orders. When officers of the Court ignore the rules without consequence, then justice can never be achieved and our system fails. The *Haeger* plaintiffs and all parties to judicial proceedings should know that such wrongful conduct has real consequence.

RESPECTFULLY SUBMITTED this 31st day of May, 2011.

THE KURTZ LAW FIRM

By: */s/ David L. Kurtz*
David L. Kurtz
7420 East Pinnacle Peak Road, Suite 128
Scottsdale, AZ  85255

Michael J. O'Connor
JENNINGS, STROUSS & SALMON, P.L.C.
One East Washington Street, Suite 1900
Phoenix, AZ   85004-2554

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on May 31, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Graeme EM Hancock
ghancock@fclaw.com
FENNEMORE CRAIG, P.C.
3003 North Central Avenue, Suite 2600
Phoenix, AZ   85012-2913

Basil J. Musnuff
BMusnuff@ralaw.com
ROETZEL & ANDRESS, LPA
222 South Main Street
Akron, OH   44308

☐ I hereby certify that on May 31, 2011, I served the attached document by mail on the following, who are not registered participants of the CM/ECF System:

By   /s/ *K. C. Rusboldt*