1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                        FOR THE DISTRICT OF ARIZONA
8

9    Leroy Haeger, et al.,                )    No. CV-05-02046-PHX-ROS
                                           )
10              Plaintiffs,                )    **ORDER**
                                           )
11   vs.                                   )
                                           )
12                                         )
     Goodyear Tire and Rubber Co., et al., )
13                                         )
                Defendants.                )
14   _____)

15          On November 8, 2012, the Court sanctioned Graeme Hancock, Basil Musnuff, and

16   Goodyear Tire and Rubber Co. ("Goodyear") based on repeated misconduct during

17   discovery.  The amount of sanctions was set as the "fees and costs incurred after Goodyear

18   served its supplemental responses to Plaintiffs' First Request" for Production of Documents

19   in September 2006.  (Doc. 1073 at 64).  Because the fees and costs were being awarded as

20   a sanction, Local Rule 54.2 regarding attorneys' fees requests did not automatically apply.

21   Out of an abundance of caution, however, and to give Mr. Hancock, Mr. Musnuff, and

22   Goodyear an opportunity to object, the Court directed Plaintiffs to submit the documentation

23   contemplated by Local Rule 54.2.  Having reviewed that documentation, the Court issues the

24   following order.

25   **I. Background**

26          The Court will not recount in detail the misconduct that served as the basis for

27   sanctioning Mr. Hancock, Mr. Musnuff, and Goodyear.  In short, sanctions were necessary

28   because "Goodyear and its attorneys adopted a strategy . . . to resist all legitimate discovery,

1   withhold *obviously* responsive documents, allow Plaintiffs and their experts to operate under

2   erroneous facts, disclose small subsets of documents as late as possible" and otherwise

3   attempt to frustrate the administration of justice. (Doc. 1073 at 65). The latest briefs from

4   Goodyear and its attorneys contain a number of arguments that are, in effect, requests for the

5   Court to reconsider its prior findings. There is no basis to revisit most of those arguments.

6   The only argument worthy of additional discussion involves the alleged absence of a direct

7   causal relationship between the misconduct and the fees and costs awarded by the Court.

8          Given the breadth of the misconduct in this case, it would be exceptionally difficult

9   to link each instance of misconduct with the harm that misconduct caused. When attorneys

10  make repeated misrepresentations in court, a 30(b)(6) witness repeatedly makes

11  misrepresentations during his deposition, and expert witnesses are knowingly misled, a court

12  must have some ability to provide relief. The Court previously concluded it would be

13  appropriate to shift all the fees and costs incurred after it became clear that Goodyear and its

14  attorneys were not acting in good faith. The Court recognizes, however, that Ninth Circuit

15  authority might be read as limiting an award of sanctions to the harm *directly* caused by the

16  misconduct. *Miller v. City of Los Angeles*, 661 F.3d 1024 (9th Cir. 2011). Therefore, to

17  prevent the need for future proceedings, the award of fees and costs will include an

18  alternative amount of the fees and costs incurred as a direct result of sanctionable conduct.

19         Regardless of whether the Court awards *all* the fees and costs after September 2006

20  or only a much smaller subset, it now appears that an inordinately complicated accounting

21  will be required. Therefore, the parties will be instructed to meet and confer in an attempt

22  to agree regarding the appropriate size of the Court's award. If they are unable to agree, the

23  Court will appoint a special master to conduct the accounting. The Court offers the

24  following in hopes of guiding the parties' discussions.

25  **II. Determining the Amount of Attorneys' Fees**

26         The Court previously indicated it would utilize the lodestar method for calculating the

27  amount of fees. (Doc. 1073 at 51 n.23). That method consists of "multiplying the number

28  of hours the prevailing party reasonably expended on the litigation by a reasonable hourly

rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (quotation omitted). Once that calculation is made, the Court "may then adjust the figure upward or downward taking into consideration twelve reasonableness factors." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1033 n.11 (9th Cir. 2012) (quotation omitted).

### A. Reasonable Hourly Rates

Plaintiffs seek the following hourly rates:

| Individual | Hourly Rate |
|---|---|
| David L. Kurtz (attorney) | $500 |
| Kerry Chrisman (paralegal) | $165 |
| Michael O'Connor (attorney) | $445 |
| John J. Egbert (attorney) | $425 |
| Paul G. Johnson (attorney) | $365 |
| Garrett Olexa (attorney) | $345 |
| Peter Donovan (attorney) | $180 |
| Michele Maser (paralegal) | $195 |
| Mary Muchmore Hogue (paralegal) | $165 |
| James Abernethy (attorney) | $400 |

Goodyear and its attorneys do not object to any of these hourly rates as unreasonable. Based on the evidence submitted by Plaintiffs, the Court finds these fees reflect the prevailing hourly rate in Phoenix for lawyers of reasonably comparable skill, experience, and reputation working on matters of this type. Therefore, any calculation of the lodestar will be based on these hourly rates.[1]

---

[1] Goodyear and its attorneys objected that these rates might not have been the prevailing rate at the time the services were performed. But this objection is foreclosed by Supreme Court authority. *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (allowing for application of current rates).

1          **B. Hours Reasonably Expended**

2          According to the time records submitted by Plaintiffs' counsel, lead counsel David

3   Kurtz spent approximately 3,700 hours on this case during the relevant time while a paralegal

4   at his firm spent approximately 1,000 hours. The attorneys and paralegals at Jennings,

5   Strouss & Salmon, P.L.C. spent approximately 1,200 hours. And attorney James Abernethy

6   spent approximately 120 hours. Goodyear and its attorneys object to these figures, claiming

7   the absolute maximum the Court could find reasonable is approximately 800 hours by Mr.

8   Kurtz and his paralegal, a little over 500 hours from all the staff at Jennings, Strouss &

9   Salmon, and no hours from Mr. Abernethy.

10         The difference between the parties' calculations for the reasonable amount of time

11  spent on this litigation is approximately 4,600 hours. Based on the Court's familiarity with

12  the case, and its participation throughout the litigation, the hours submitted by Plaintiffs

13  appear more reasonable than those proposed by Goodyear and its attorneys. But the Court

14  is not yet prepared to definitively resolve the reasonable number of hours. Instead, the

15  parties will be instructed to attempt to reach settlement on two figures. First, the reasonable

16  number of hours incurred after September 2006. Second, the reasonable number of hours

17  directly attributable to the sanctionable conduct identified in the sanctions order. If the

18  parties are able to reach agreement on these two figures, the Court will adopt the parties'

19  agreement, awarding the higher figure but also deeming the lower figure an appropriate

20  alternative in the event the sanctions must be so limited.

21         If the parties are unable to reach agreement on the number of hours reasonably

22  expended, the appointment of a special master appears appropriate. Fed. R. Civ. P. 53. That

23  special master would be tasked with preparing a report on the appropriate lodestar regarding

24  attorneys' fees. *See, e.g.*, *Agostino v. Quest Diagnostics, Inc.,* 2012 WL 2344865 (D.N.J.

25  June 20, 2012) (appointing special master to prepare report on attorneys' fees dispute). At

26  present, the Court is inclined to require the parties split the cost of a special master equally

27  but the special master would be instructed to submit a recommendation regarding the final

28  allocation of the costs associated with his or her service.

1    Pursuant to Federal Rule of Civil Procedure 53, the Court can appoint a master only
2    after giving "the parties notice and an opportunity to be heard." Fed. R. Civ. P. 53(b)(1).
3    Therefore, if the parties cannot reach an agreement on the amount of attorneys' fees, the
4    parties will be ordered to file a joint statement setting forth their position on the following
5    issues: whether appointment of a special master is warranted; how the costs of the special
6    master should be allocated; and the names of three agreed upon individuals qualified to serve.
7    Each interested party will be allowed three pages.

8    **III. Determining Appropriate Costs'**

9    As with the amount of attorneys' fees, the parties also present very different views
10   regarding the appropriate amount of costs to award. Goodyear and its attorneys argue that
11   the Court should award only those costs that qualify as "taxable" under 28 U.S.C. § 1920.
12   It is unclear why Goodyear and its attorneys believe the award of costs must be so limited.
13   And the award cannot be so limited.

14   The Ninth Circuit has "repeatedly . . . allowed prevailing plaintiffs to recover non-
15   taxable costs where statutes authorize attorney's fees awards to prevailing parties."[2] *Grove*
16   *v. Wells Fargo Financial California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). In the specific
17   context of sanctions, the Supreme Court has held a court may award "the entire amount of
18   . . . litigation costs paid to . . . attorneys." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 40 (1991).
19   Therefore, there is no bar to awarding Plaintiffs their taxable and non-taxable costs.

20   Again, the parties will be instructed to attempt to agree regarding costs. As with the
21   attorneys' fees, there should be an attempt to agree on the costs incurred after September
22   2006 as well as the costs incurred as a result of the sanctionable conduct. If they cannot
23   agree, the special master will be tasked with conducting an accounting.[3]

24

25

26   [2] The prevailing practice in Phoenix is to bill costs separate from an attorneys' hourly rate. *Agster v. Maricopa County*, 486 F. Supp. 2d 1005, 1022 (D. Ariz. 2007).

27   [3] David Kurtz admits he was unable to locate supporting documents for eleven cost
28   items, totaling $4,880.73 (Doc. 1112-1 at 8-9). Those costs will not be awarded.

## IV.  Motions for Clarification

There are two pending requests for clarification.  First, Goodyear seeks clarification that the additional information submitted by Spartan Motors, Inc. (Doc. 1083) will not be addressed at this time because of the pending appeal.  The additional evidence is a motion for reconsideration regarding the portion of the sanctions order addressed to Spartan's request for sanctions against Goodyear.  Because the sanctions order regarding Goodyear is currently on appeal, the Court will not address Spartan's additional evidence at this time.

The second request for clarification comes from Plaintiffs.  In the sanctions order, the Court apportioned twenty percent of the fees and costs to Mr. Hancock and the remaining eighty percent to Mr. Musnuff and Goodyear.  (Doc. 1073 at 64).  Plaintiffs now seek clarification on whether the Court intended to impose joint and several liability on Mr. Hancock, Mr. Musnuff, and Goodyear.  Goodyear and its attorneys object to the Court addressing this issue given that Goodyear's appeal is pending.  Out of an abundance of caution, the Court will defer ruling on this issue until the Ninth Circuit issues the mandate.

## V.  Attorney Client Privilege

During the sanctions proceedings, Goodyear and its attorneys attempted to justify their behavior by disclosing certain information that might have been subject to the attorney-client privilege.  Given that context, the disclosures will be considered a waiver of the privilege.  *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield.").

Accordingly,

**IT IS ORDERED** the Motion for Attorney Fees and Costs (**Doc. 1082**) is **GRANTED IN PART** as set forth above.

**IT IS FURTHER ORDERED** no later than July 19, 2013 the interested parties shall meet and confer regarding the appropriate amount of attorneys' fees and costs.  If they are able to reach agreement, no later than July 22, 2013 the parties shall file a joint statement

1  identifying the appropriate amount of attorneys' fees and costs incurred after September 2006
2  as well as the attorneys' fees and costs incurred as a direct result of the sanctionable conduct.

3      **IT IS FURTHER ORDERED** if the parties cannot agree on the appropriate amount
4  of attorneys' fees and costs, no later than July 26, 2013 they shall file a joint statement of no
5  more than three pages per party with each party setting forth: whether appointment of a
6  special master is warranted and how the costs of the special master should be allocated.  The
7  parties should also jointly identify three individuals qualified to serve.

8      **IT IS FURTHER ORDERED** the Motion for Clarification (**Doc. 1089**) is
9  **GRANTED**.

10     **IT IS FURTHER ORDERED** the Motion for Clarification (**Doc. 1114**) is **DENIED**
11  **WITHOUT PREJUDICE**.  Plaintiffs should renew their request, if appropriate, within ten
12  days of the mandate being issued.

13     DATED this 26th day of June, 2013.

14

15
16                                    Roslyn O. Silver
17                            Chief United States District Judge
18
19
20
21
22
23
24
25
26
27
28