UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| Leroy Haeger, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 2:05-cv-02046-GMS |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | July 13, 2017 |
| Goodyear Tire & Rubber | ) | |
| Company, et al., | ) | 2:30 p.m. |
| | ) | |
| Defendants. | ) | |

_____)

BEFORE:  THE HONORABLE G. MURRAY SNOW, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE

Official Court Reporter:
Charlotte A. Powers, RMR, FCRR, CRR, CSR, CMRS
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 40
Phoenix, Arizona  85003-2151
(602) 322-7250

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                    A P P E A R A N C E S

 2


 3    For the Plaintiffs:

 4            Kurtz Law Firm
              By: DAVID L. KURTZ, ESQ.
 5            7420 E Pinnacle Peak Road, Suite 128, Building D
              Scottsdale, AZ  85255
 6

 7    For the Defendant Spartan Motors:

 8            Lisa G Lewallen PLLC
              By: LISA GAY LEWALLEN, ESQ.
 9            PO Box 33430
              Phoenix, AZ  85067
10

11    For the Defendant Goodyear Tire:

12            Porter Wright Morris & Arthur LLP
              By: JILL G. OKUN, ESQ.
13            950 Main Avenue, Suite 500
              Cleveland, OH  44113
14    and
              Squire Patton Boggs
15            By: DONALD A WALL, ESQ.
              1 E. Washington Street, Suite 2700
16            Phoenix, AZ  85004

17

18    For Movant Fennemore Craig PC and Graeme Hancock:

19            Snell & Wilmer LLP – Phoenix, AZ
              By: JAMES R CONDO, ESQ.
20            1 Arizona Center, 400 E Van Buren
              Phoenix, AZ  85004
21

22    For Movant Roetzel & Andress and Basil J Musnuff:

23            Osborn Maledon, PA
              By: JEFFREY BRYAN MOLINAR, ESQ.
24            PO Box 36379
              Phoenix, AZ  85067
25
```

```
 1                      P R O C E E D I N G S

 2              (Proceedings resume at 2:30 p.m.)

 3          THE COURT:  Please be seated.

 4          COURTROOM DEPUTY:  This is CV05-2046, Haeger v.

 5  Goodyear Tire & Rubber Company, on for status conference.

 6          Counsel, please announce your appearances.

 7          MR. KURTZ:  Good afternoon, Your Honor.

 8          David Kurtz on behalf of the Haeger family.

 9          MS. LEWALLEN:  This is Lisa Lewallen.

10          I'm here for Spartan Motors.

11          THE COURT:  I'm sorry.  I didn't get who you were

12  representing, Ms. Lewallen.

13          MS. LEWALLEN:  Spartan Motors.

14          THE COURT:  All right.

15          MS. OKUN:  Jill Okun, Your Honor, on behalf of

16  Goodyear.

17          MR. WALL:  Don Wall also on behalf of Goodyear.

18          THE COURT:  Who will be speaking?

19          MS. OKUN:  I will, Your Honor.

20          MR. CONDO:  Good afternoon, Your Honor.

21          James Condo on behalf of Graeme Hancock and Fennemore

22  Craig.

23          MR. MOLINAR:  Good afternoon, Your Honor.

24          Jeff Molinar, Osborn Maledon, representing Roetzel &

25  Andress firm --
```

1          THE COURT REPORTER:  I'm sorry, Counsel.  We can't

2     hear you.

3          MR. MOLINAR:  I'm sorry.  I'll use the microphone.

4          Jeff Molinar, Osborn Maledon, representing the Roetzel

5     & Andress firm, and Basil Musnuff.

6          THE COURT:  I guess I'm going to need to understand

7     this case a little better than I do.

8          Why are all the parties still here, and what matters

9     are pending before me, other than the remand I've received from

10    the Ninth Circuit?  I don't even understand the motion for a

11    settlement conference here, to the extent that it refers to --

12    I'm sorry, I -- I may be indicating my ignorance, but that is,

13    in fact, what I am -- to the extent it refers to some sort of

14    motion filed by the Haegers.  I don't see any pending motion.

15         MR. KURTZ:  Your Honor, David Kurtz.

16         We had requested a status conference to get on a

17    briefing schedule with the Court for the issues raised on

18    remand.

19         THE COURT:  All right.  And the issues raised on

20    remand are, one, did Goodyear waive anything -- any argument to

21    prevent Judge Silver's alternative 2 million-dollar award from

22    coming in -- or for being effective; and then if not, then

23    there would be further proceedings.  Is there anything else

24    to -- that we have to deal with?

25         MR. KURTZ:  No, Your Honor.  I -- you're correct about

1    the waiver issue and the briefing issues.  I think there's

2    distance between the Haegers and Goodyear regarding the scope

3    of briefing on remand, and some of those issues I thought I

4    would bring to the Court's attention and see if we could

5    address them today.

6             THE COURT:  All right.  Well, tell me what the

7    difference is.

8             MR. KURTZ:  The -- Goodyear believes that the record

9    is fixed on remand.  The Haegers believe that the Court is

10   entitled to consider additional deceptions that bear on the

11   causation issue.  During the course of what I'll refer to, Your

12   Honor, as Haeger 1, Judge Silver found after the case was

13   settled that there were certain discovery misconduct that led

14   to her sanction award.  It centered around test data.  We were

15   instructed in the course of those proceedings to start a new

16   action for settlement fraud issues.

17            During the course of that case, Haeger 2, which has

18   been resolved but was pending in front of Judge Hannah,

19   Goodyear disclosed all of the failure data and death and injury

20   claims in the -- that had been hid from Judge Silver.  We have

21   a big record we'd like to share with the Court that shows the

22   additional deceptions that bear on this Court's causation

23   analysis and the exercise of its discretion, and it's replete

24   with representations from the very beginning of the case to the

25   very end of the case that mislead Judge Silver repeatedly about

1    what was wrong -- or about the admissibility of certain

2    evidence associated with the tire.

3           And so we wanted to have the opportunity to brief that

4    because if the Court gets to the causation issue, we believe

5    understanding the full scope of the deception is the central

6    ingredient of the exercise of the Court's discretion to

7    evaluate what was and what wasn't caused by these grand

8    deceptions.

9           Thank you.

10          THE COURT:  Well, Mr. Kurtz, the -- what are you

11   asking for in the end?  Are you asking for me to reopen the

12   settlement -- the underlying settlement?

13          MR. KURTZ:  Not -- not at all, Your Honor.

14          The issue, as I -- on remand before the Court is, what

15   amount of -- what's their right amount of sanctions?  Is it

16   limited to the 2-million dollar amount; that is, did Goodyear

17   waive the right to contest that any further, as the Court

18   noted?  And if we're going to go forward in the causation

19   analysis, we believe that the evidence of deception upon Judge

20   Silver was such that we can show all of these fees were

21   completely unnecessarily incurred as a result of how they

22   deceived the Court so completely, and knowingly.

23          And so what I want simply from you today, Judge, is to

24   set a briefing schedule for us to present those issues to the

25   Court, both the waiver issue and a full view of the evidence,

for the Court's consideration of the causation analysis so we

can reach whatever decision the Court decides upon regarding

the scope of the mis -- misconduct by Goodyear, and its impact

upon the fees incurred.

THE COURT:  Why is there anybody in this case except

for the Haegers and Goodyear at this point?

MR. KURTZ:  We -- for the record, Your Honor, we've

resolved the claims with the law firms.  Those agreements carve

out the vicarious liability of Goodyear for the acts of the

attorneys, so they -- they have no part in these proceedings.

I think they came as a courtesy to the Court because they got

notice.  But I'll let counsel address that.

THE COURT:  Mr. Molinar?

MR. MOLINAR:  Your Honor, I believe your initial

understanding is right.  We do believe we have no part in the

remand or other --

THE COURT:  Could I get you to speak into the

microphone, please.

MR. MOLINAR:  I'm sorry.  I'm sorry.  We're trying to

share a microphone.

Judge Snow, I don't believe, consistent with your

understanding that you expressed, that we have any part in the

remand or any proceedings going forward.  We're here solely to

the extent that any issues that potentially could implicate our

clients remain, and those might relate to Spartan Motors.  I

1   don't know what its intent is with respect to potential future

2   claims, but it's only for that concern that we're here.  And

3   again, I can't elaborate more.  I'm not sure what those

4   potential claims may be.

5            THE COURT:  All right.  We'll talk to Spartan in a

6   second.

7            MR. MOLINAR:  Thank you, Your Honor.

8            THE COURT:  Mr. Condo, is your view the same?

9            MR. CONDO:  View is identical, Your Honor.  There is

10   no reason for us to be here.  Mr. Kurtz and I spoke in the

11   hall.  In fact, David said to me, what are you doing here?

12   He's right.  We're here because we got notice, and we want to

13   make sure that if there is something the Court needs to address

14   on behalf of our clients, we're present to do so.

15            THE COURT:  Well, I appreciate that courtesy.

16            Is there any reason they should be here, Ms. Lewallen?

17            MS. LEWALLEN:  Your Honor, as -- as Spartan

18   understands it, the Ninth Circuit decided the question that

19   Goodyear was vicariously responsible for the acts of its

20   attorneys.  With that in mind, and that being the law of the

21   case, no, I don't believe there's any further need for

22   representatives for either Mr. Hancock, his firm, or

23   Mr. Musnuff and his firm to be here.

24            THE COURT:  All right.  Well, I will love to hear what

25   Goodyear has to say about all of this.

1    MS. OKUN:  Thank you, Your Honor.

2    Your assessment --

3    THE COURT:  Could I get you to pull the microphone --

4    MS. OKUN:  Oh, I'm sorry.  I'm sorry.

5    Your assessment is correct in terms of the Supreme

6    Court remand.  The waiver issue is the first order of business.

7    Plaintiffs have argued waiver, that the 700-some-odd thousand

8    dollars is the most deduction that we get.  We've opposed that,

9    and so that has to be the first order of business.

10    With regard to Mr. Kurtz's request for expanding the

11    scope of sanctions, we -- we disagree.  We -- we don't think

12    that's appropriate.  The sanction motion was based and resolved

13    by the judge, premised on a failure to disclose certain test

14    documents.  He's now trying to raise additional evidence that

15    he claims wasn't disclosed.  Significantly, that has to do with

16    evidence of other incidents that occurred, which Judge Silver

17    happened to exclude during the course of the original Haeger

18    proceedings.  So the fact that that wasn't disclosed is not a

19    violation of anything or could possibly be any sort of

20    discovery misconduct.

21    Further, I don't -- I don't see how that can enlarge

22    what his fees were, considering that the judge gave fees from a

23    point in time forward.  But that appears to be his argument.

24    And thirdly, we believe that, based on the

25    Goodyear/Haeger settlement in the state case, which is a

1    confidential settlement agreement, but it was a full release,

2    and we don't believe anything beyond what the Supreme Court has

3    remanded is permitted.  That's -- that's as to the Haegers.

4             THE COURT:  Okay.

5             MS. OKUN:  With regard to Spartan, where this case

6    left off before Judge Silver is that she denied sanctions to

7    Spartan because of a lack of causation.  They didn't serve any

8    discovery, and the district judge found no causation and no

9    entitlement to any award.

10            Spartan sought leave of court to provide additional

11   evidence of causation.  Judge Silver granted them that ability

12   to seek reconsideration and gave them a date by which to file,

13   which was December of 2012.  They filed their reconsideration

14   with two affidavits in an effort to show causation.  Then the

15   case went up on appeal.

16            So as we see it, this Court gets to decide, are they

17   going to -- are you going to deny that reconsideration, or, if

18   not, we get an opportunity to respond to that motion.

19            And the last thing I want to say at this point, the

20   comment that the Ninth Circuit decided vicarious liability

21   against Goodyear is incorrect.  Very specifically, Judge Silver

22   made an apportionment of liability, specifically 20 percent to

23   Mr. Hancock and 80 percent jointly and equally between Goodyear

24   and Mr. Musnuff.  So I believe that apportionment that Judge

25   Silver found, which has been affirmed and not appealed, is the

1   proper apportionment for any fees that could possibly go

2   forward.

3           THE COURT:  And so your position is that Mr. Condo and

4   Mr. Molinar still need to be here?

5           MS. OKUN:  If -- if this Court is going to allow

6   Spartan -- grant reconsideration and entertain their ability to

7   get fees, the answer would be yes.

8           THE COURT:  So, really, how does Spartan wish to

9   proceed?

10          MS. LEWALLEN:  Thank you, Judge.

11          When we last left off with Judge Silver, we had filed

12  a supplemental pleading with the two affidavits that were

13  directed to the state of the evidence at the time.  Spartan

14  agrees with the arguments of the plaintiffs that since that

15  time, from what Spartan has learned, particularly most recently

16  via a motion to intervene in the state court settlement fraud

17  case that Mr. Kurtz referenced, that there is additional

18  evidence regarding the ongoing misconduct in Haeger 1 that

19  Spartan was not aware of.  Our position in light of that,

20  Judge, is that when Judge Silver ordered us to file a

21  supplemental pleading to provide her evidence of causation, we

22  were not aware of all the additional evidence and would like to

23  supplement that evidence for your consideration.

24          Judge Silver specifically declined to make a decision

25  regarding Spartan's sanction request, in light of the fact that

1      the very day that we filed our supplemental pleading, Goodyear

2      filed its Notice of Appeal.

3              So in her order, which is docket number 1121, she

4      specifically discussed the fact that a motion for clarification

5      by Goodyear had been filed regarding the additional information

6      Spartan had submitted, and that it will not be addressed at

7      this time because of the pending appeal.  She says:  Because

8      the sanctions order regarding Goodyear is currently on appeal,

9      the Court will not address Spartan's additional evidence at

10     this time.

11             So now that the case is back with you to go forward,

12     we also would like a briefing schedule so that we can be heard

13     on that.

14             THE COURT:  What are you briefing?

15             MS. LEWALLEN:  I'm sorry.

16             THE COURT:  What are we briefing; whether or not you

17     can expand the record?

18             MS. LEWALLEN:  It is the supplemental evidence, yes,

19     that had we known of when she issued this order to us to

20     provide the evidence of causation, of course we would have, had

21     we known of it.

22             THE COURT:  Well, let me then see if I can restate --

23     restate the issues.

24             As it pertains to the Haegers and Goodyear, the

25     attorneys have no role.  The Haeger claims and the Goodyear

1    claims have been resolved in such a way that the attorneys no

2    longer need representation.  The attorneys need representation

3    only if I grant Haeger's request to expand the record.

4          Does everybody agree with that, or is that also a

5    mis -- misunderstanding and misapprehension?

6          MR. KURTZ:  Well, one -- I guess one caveat, Your

7    Honor.  When we went up on appeal originally, like Spartan, the

8    Haegers had a motion for clarification before Judge Silver.

9          THE COURT:  Well, you're the ones that appealed;

10    right?  No, I guess you're not.  Goodyear appealed.

11          MR. KURTZ:  No, sir.  No.

12          We had a motion for clarification.  The judge had made

13    a variety of findings throughout her written published decision

14    about the misconduct of Musnuff and Hancock and Goodyear in a

15    cooperative endeavor.  In her final judgment on fees, she said

16    joint and several liability for Goodyear and Musnuff, and

17    Hancock is responsible for 20 percent.  We asked her for

18    clarification, whether that 20 percent was to be joint and

19    several.  The appeal went up, and she said:  Come back down,

20    and if necessary we'll address that following the mandate.

21          I didn't think it was necessary to address it, Judge,

22    because the issue of joint and several liability was fully

23    briefed before the Ninth Circuit which relied on Link vs.

24    Wabash, a Supreme Court case, to say you're responsible for

25    what your lawyers do.  And that solved this joint and several

1    liability issue, from my view.

2           Goodyear sought to present that question to the United

3    States Supreme Court.  The Court declined review.  So I thought

4    the issue of joint and several liability was rendered

5    completely moot by the appellate record.

6           THE COURT:  Goodyear?

7           MS. OKUN:  We disagree with that.  I don't -- I don't

8    see that was an issue.  Our appeal had to do with the propriety

9    of the sanctions in the first instance.

10          THE COURT:  Well, the appeal to the Supreme Court,

11   what did the appeal to the Ninth Circuit have to do with?

12          MS. OKUN:  That was the appeal to the Ninth Circuit.

13   It was on both issues.  The propriety of the sanctions in and

14   of themselves, and then the -- how the award was determined.

15          THE COURT:  And did the Ninth Circuit determine that

16   Goodyear is vicariously liable for the acts of its attorneys?

17          MS. OKUN:  I -- I don't believe that's correct, Your

18   Honor.  I believe that Judge Silver made a specific

19   apportionment in her order --

20          THE COURT:  I'm not talking about Judge Silver.  I'm

21   talking about the Ninth Circuit now.

22          MS. OKUN:  I don't believe that was addressed.

23          THE COURT:  In the Ninth Circuit's decision?

24          MS. OKUN:  Yes.

25          THE COURT:  Okay.

1          So let me just observe first that Mr. Molinar's firm,

2     I was a member of about 15 years ago.  I don't know

3     Mr. Molinar.  I don't even know that I've met him, although I

4     may have met him.  Mr. Harrison is also on the briefings, was

5     not a member of the firm at the time.  I'm more than happy to

6     recuse from this case if any party would like me to do so.

7          MR. KURTZ:  The Haegers have no concern with Your

8     Honor handling the matter.

9          MS. LEWALLEN:  No requests for recusal from Spartan.

10          MS. OKUN:  We're fine with it, Your Honor.

11          Thank you.

12          MR. CONDO:  Your Honor, Graeme Hancock and Fennemore

13     Craig are fine with it.

14          MR. MOLINAR:  We're fine with it.

15          THE COURT:  All right.

16          Well, here is how I propose proceeding then.  It seems

17     to me we ought to do a first level of briefing before we decide

18     whether I'm going to expand the record or not.  And the first

19     two things I want briefed are, did the Ninth Circuit decide

20     whether or not Goodyear is vicariously liable for the acts of

21     its attorneys; and if it did not, is Goodyear nevertheless

22     vicariously liable for the acts of its attorneys?

23          And the second thing is, did Goodyear waive any

24     objection to Judge Silver's alternative sanctions award?

25     That's what I want briefed first.

1    How long do you need to get -- get your briefing on

2 file, and should we do it simultaneously, or do I let some

3 party go first?

4    MR. KURTZ:  I think it would be more expeditious,

5 Judge, to probably do it simultaneously.  The same issues have

6 been briefed ad nauseam.  We've been through it.  The record is

7 complete, so it's not -- it's a substantial undertaking, but

8 it's all been done, including in front of Judge Hannah, who had

9 dispositive motions on vicarious liability in front of him.

10    THE COURT:  Well, simultaneously doesn't seem to be a

11 bad idea to me.

12    Who wants to file -- any objection by Goodyear?

13    MS. OKUN:  That's fine, Your Honor.

14    THE COURT:  Who all wants to file briefs on these

15 questions?  Does everybody want to be heard on this?

16    MR. CONDO:  Your Honor, on behalf of my client's

17 lawyers, I'm not sure this is -- we have a dog in this fight,

18 based on what I've heard in the courtroom and what Your Honor

19 is looking for guidance on.  I don't think we want to.

20    MR. MOLINAR:  We would agree with Mr. Condo's

21 position, Your Honor.

22    THE COURT:  All right.  Do you want to come back in,

23 if for some reason I determine that there is joint and several

24 liability or apportioned liability?

25    MR. CONDO:  Well, I -- certainly to the extent that my

UNITED STATES DISTRICT COURT

1   clients are going to be expected to make any additional

2   payments, absolutely.  We thought we had settlements with the

3   Haegers and Goodyear, which essentially eliminated all of our

4   potential exposure to either, which would include vicarious

5   liability for any and all claims arising out of the underlying

6   action.  So if -- if Your Honor is going to grant -- move in

7   that direction, then we may want to brief whether or not the

8   settlement agreement essentially removes us.

9          THE COURT:  Well, then I want to make that -- I want

10  to include that in this round of briefing.

11         MR. CONDO:  Okay.

12         THE COURT:  So in other words, what I'm really getting

13  at is, do you have any role here?  And if your view is that the

14  settlement agreements remove you from all or part of the

15  liability in this case, then I expect you to join in this first

16  round of briefing, based on the settlement agreements, if

17  that's your assertion.

18         MR. CONDO:  All right.

19         Let me just be clear with Your Honor.  What I heard

20  from Spartan and Haegers is they don't expect us to

21  participate.  Goodyear does.  So what we would be briefing for

22  Your Honor is whether or not the terms of our settlement

23  agreement with Goodyear provide for a release.

24         THE COURT:  That's correct.

25         MR. CONDO:  And if that's the case, Your Honor, since

1   it was a confidential settlement filed under seal with Judge

2   Hannah and approved in an appropriate proceeding, may we also

3   file to preserve the confidentiality of the settlement

4   agreement our filing with Your Honor in order to --

5          THE COURT:  Well --

6          MR. CONDO:  -- and obviously we would have to share it

7   with Goodyear so that Goodyear could respond, but I don't know

8   that we need to make a public filing or that it needs to be

9   filed with Spartan or anyone else.

10         THE COURT:  Let me ask.  Does Goodyear really care if

11  the provisions -- or the Haegers -- do either of you really

12  care if the provisions that pertain to the release are public,

13  or the alleged release are public, as long as the settlement

14  amounts are kept confidential?

15         MR. KURTZ:  Haegers have no concern, Your Honor.

16         MS. OKUN:  I'm not sure that that is an issue, but

17  sort of going off of what Mr. Condo said, since part of

18  Goodyear's view of this whole situation is that we got a full

19  release from the Haegers in the Haeger 2 action, which

20  releases, in our view, everything going forward, that is a --

21  also a confidential settlement agreement.  And if that's going

22  to be part of this initial round, I, too, would like to be able

23  to present that under seal to the Court.

24         THE COURT:  Well, I have no objection to you

25  presenting it.  I just don't know that we need to complicate it

UNITED STATES DISTRICT COURT

1   by making it under seal.

2         Do the Haegers care if the arguments that pertain to

3   the potential release are made, as long as the settlement

4   amounts are kept confidential?

5         MR. KURTZ:  We have no concern, Your Honor.

6         THE COURT:  All right.  So I don't see any reason for

7   anybody to do any confidential filing, so long as you keep the

8   settlement amounts, the monetary amounts, out of the record.

9   And I don't see any reason I need to know what those amounts

10  are.  It doesn't sound like it bears on this issue at all.

11        Yes?

12        MS. LEWALLEN:  Judge, getting back to your earlier

13  question about who wants to be involved in the briefing on the

14  vicarious liability issue, just so for administrative purposes,

15  I think probably it would be easiest for Spartan to just file a

16  joint filing with the plaintiffs.

17        THE COURT:  That's fine.

18        How long do you want before we -- I get this briefing?

19  And do you want responses to the other side's simultaneous

20  briefing?

21        MR. KURTZ:  I see no need for responses, as long as

22  we're just making a simultaneous filing.  As I've said, the

23  parties have been through it before.  I would think,

24  considering the breadth of the briefing that's before it,

25  probably three weeks to submit it, Judge.

1          THE COURT:  Is that enough for all parties that want

2     to brief this issue?

3          MS. OKUN:  I was going to ask Your Honor, since we're

4     really talking about two different issues --

5          THE COURT:  Yes.

6          MS. OKUN:  -- I was going to ask for 30 days.

7          THE COURT:  Thirty days is reasonable.  I want

8     simultaneous briefing then on the two issues that I've

9     indicated to be filed no later than August 14th.

10          MS. OKUN:  One additional comment, Your Honor.

11          In the Goodyear settlement agreement with the

12     plaintiffs, there are other provisions that are not the release

13     provisions that we would like to remain confidential, so I

14     would like to at least be able to redact those.

15          THE COURT:  Yes, I -- without having to go through

16     everything now, as long as it relates to just the release

17     provisions, I assume you can work that out with the parties and

18     just say what you'd like to be kept confidential, just to be

19     sure that it is kept confidential; that all parts of those be

20     redacted except for -- to the extent they need to be filed at

21     all, except for I'd like to see the parts that you say pertain

22     to the release.  And I think you can work that out amongst

23     yourselves, can't you?

24          MS. OKUN:  Thank you, Your Honor.  I hope so.

25          THE COURT:  All right.

1          MR. KURTZ:  Just so the -- not to have any confusion,

2     I'm lacking a little bit of understanding what Goodyear's issue

3     is about our release.  I mean, the release is really

4     straightforward, Judge.  It carves out the sanction

5     proceedings.

6          THE COURT:  Well --

7          MR. KURTZ:  I don't know how I can simultaneously

8     brief that if I don't know what their issue is.

9          THE COURT:  All right.  Can you give us any insight?

10         MS. OKUN:  There are provisions in -- in this release

11    having to do with documents, et cetera, Mr. Kurtz, that you're

12    aware of, that I would choose to redact on behalf of my client.

13    The settlement -- the release provisions clearly are at issue,

14    and I agree.  And I also agree that all that's left is what was

15    before the Supreme Court.  That's -- and that is the fee issue.

16    We just differ as to what we think that entails.

17         THE COURT:  Does that help at all, Mr. Kurtz?

18         MR. KURTZ:  Well, I think we're on the same page, Your

19    Honor.  I don't understand that there's anything to brief.  As

20    I understand, Goodyear's position is that the fee issues in the

21    sanctioned proceedings are -- are carved from our agreement.

22    That's what we're here for.  I don't know -- I know what

23    Ms. Okun is concerned about.  There is some other things in the

24    agreement.  They're collateral to what's before this Court on

25    fee stuff, and I don't think we probably need to brief those.

1          MS. OKUN:  No.

2          THE COURT:  She just wanted to be sure that nobody

3     filed them.  That's all she's saying.

4          MR. KURTZ:  Oh, okay.  Yeah.  No.  There are records,

5     Your Honor, that would -- that I don't think are going to be

6     within the ambit of Your Honor's first two issues, so there

7     won't be any issues to deal with confidentiality, things that I

8     can imagine.

9          THE COURT:  All right.  So let me restate those issues

10    again.

11          Number one is, anything that relates to whether or not

12    the attorneys remain liable, remain personally on the hook, for

13    anything, is the first issue, whether it -- whether the

14    argument arises from the settlement agreement, whether it

15    arises from rulings made by the Ninth Circuit, or whether it

16    arises from just the application of the law.  Whether or not

17    the attorneys remain on the hook for anything is the first

18    issue.

19          And the second issue is, did Goodyear waive any

20    arguments that would otherwise indicate that Judge Silver's

21    alternate award should be imposed?

22          And after we settle those issues, then I believe we'll

23    be in a better position to take up Spartan's issues.

24          And I'll have those filed, again, by August 14th.

25          And is there anything else we need to discuss?

1          MR. KURTZ:  No, Your Honor.

2          Thank you.

3          MS. OKUN:  Thank you, Your Honor.

4          MR. CONDO:  Nothing, Your Honor.

5          MR. MOLINAR:  No, Your Honor.

6          MS. LEWALLEN:  Nothing from Spartan.

7          Thank you.

8          THE COURT:  Thank you.

9              (Proceedings in recess at 3:07 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1          <u>C E R T I F I C A T E</u>

2

3          I, CHARLOTTE A. POWERS, do hereby certify that I am

4     duly appointed and qualified to act as Official Court Reporter

5     for the United States District Court for the District of

6     Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8     a full, true, and accurate transcript of all of that portion of

9     the proceedings contained herein, had in the above-entitled

10    cause on the date specified therein, and that said transcript

11    was prepared under my direction and control.

12          DATED at Phoenix, Arizona, this 18th day of July,

13    2017.

14

15                                  s/Charlotte A. Powers
                                   <u>                    </u>
16                                 Charlotte A. Powers, RMR, FCRR

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**