1    WO

6    **IN THE UNITED STATES DISTRICT COURT**

7    **FOR THE DISTRICT OF ARIZONA**

9    Leroy Haeger, et al.,                              No. CV-05-02046-PHX-GMS

10                    Plaintiffs,                        **ORDER**

11   v.

12   Goodyear Tire & Rubber Company, et al.,

13                    Defendants.

15         Pursuant to the Court's Order, (Doc. 1174), the parties filed briefings concerning

16   Defendant Goodyear's vicarious liability and potential waiver of claims. (Docs. 1181–

17   84). For the reasons stated below, the Court finds that Goodyear is vicariously liable for

18   the acts of its attorneys in this lawsuit; that Basil Musnuff, Graeme Hancock, and

19   Fennemore Craig, P.C. have no additional liability in connection with these lawsuits; and

20   that Goodyear waived any additional objections to fees beyond the objections it made at

21   the District Court.

22                                    **BACKGROUND**

23         The Haegers filed a product liability suit against Goodyear Tire in 2005. After

24   several years of litigation and multiple discovery disputes, the parties settled the lawsuit

25   in 2010. Nearly a year after settling, the Haegers filed a motion for sanctions against

26   Goodyear due to extensive bad faith discovery fraud. (Doc. 938). The District Court

27   found that "[t]he misconduct at issue appears to have stemmed from a deliberate

28   corporate strategy adopted by Goodyear to prevent the disclosure of [certain] test

1  results," as supported by "the fact that Goodyear's 30(b)(6) witness did not disclose the

2  test results and even testified that they did not exist." (Doc. 938). The District Court

3  imposed sanctions and asked for additional briefing to determine the appropriate amount

4  to be awarded. *Id.*

5  In its subsequent brief, the Haegers requested the Court to award the entirety of

6  their legal fees from the lawsuit. In its response brief, Goodyear argued that the award

7  must be proximately caused by Goodyear's conduct and could not "exceed the costs,

8  expenses and attorneys' fees reasonably incurred because of the sanctionable conduct."

9  (Doc. 1067).

10  In the sanctions determination, the District Court noted that the law allowed "an

11  award of sanctions only in the amount of harm directly caused by the sanctionable

12  conduct." (Doc. 1073). But, the District Court hesitated to apply the causation rule

13  because Goodyear not engaging in discovery fraud would lead to uncertain, ambiguous

14  outcomes. The case could have settled and "one could conclude practically all of

15  Plaintiffs' fees and costs were due to misconduct[,]" or alternatively, because the lawsuit

16  would have been prolonged for other reasons, "one could conclude practically none of

17  Plaintiffs' fees and costs were due to misconduct . . . ." (Doc. 1073). It further

18  concluded that monetary sanctions "usually must be premised on a specific factual

19  finding of a direct causal link between the sanctionable conduct and the alleged harm"

20  and "[o]nly when the sanctionable conduct rises to a truly egregious level can all of the

21  attorneys' fees incurred in the case be awarded." (Doc. 1073) (citing *Chambers v.*

22  *NASCO, Inc.*, 501 U.S. 32, 57 (1991)). Finding that Goodyear's misconduct was

23  repeated and egregious, the District Court decided to award all of the attorney fees. (Doc.

24  1073).

25  The Haegers then filed their fee petition with an accounting of requested fees,

26  (Doc. 1082), and Goodyear objected to certain requests. (Docs. 1100, 1103). In an

27  opening footnote, Goodyear noted that its objections to certain fees should not be

28  construed "as waiving the impropriety of this Court's Order requiring payment of all fees

1   from November 2006 onward as opposed to incremental fees caused by Goodyear's

2   alleged discovery misconduct . . . ."  (Doc. 1103 at 1–2, n.1).  Goodyear objected to

3   specific fee requests according to several different theories that it identified, including

4   block billing, re-created time, duplication, incompleteness, and "entries outside the scope

5   of the court's sanctions' order."  (Doc. 1103).  In its Response Goodyear developed a

6   code for each categorical objection ("A" for re-created time; "B" for block-billing; etc.),

7   and it noted objections by writing the designated coded letter next to each objectionable

8   fee request. (Doc. 1100).  Goodyear objected to the large majority of cost and fee entries,

9   and many entries had multiple objections.  (Doc. 1100).  Goodyear's code "F" objection

10  represented objections to fee requests unrelated to the alleged harm.  In total, the Haegers

11  requested nearly $2.8 million, of which Goodyear objected to $722,406.52 for lack of

12  causation with the code "F" objection.

13          Given the extent of the request and the objections, the District Court noted that "it

14  now appears that an inordinately complicated accounting will be required[,]" and it

15  therefore instructed the parties to meet and confer in an attempt to agree concerning the

16  size of the Court's award. (Doc. 1121).  The District Court "recognize[d], however, that

17  Ninth Circuit authority might be read as limiting an award of sanctions to the harm

18  *directly* caused by the misconduct."   (Doc. 1121)   The District Court, therefore,

19  determined to "include an alternative amount of the fees and costs incurred as a direct

20  result of sanctionable conduct" for the purpose of "prevent[ing] the need for future

21  proceedings . . . ."  (Doc. 1121).  Accordingly, the District Court instructed the parties to

22  attempt to reach settlement on two figures: first, the reasonable number of hours incurred

23  after September 2006; and second, the reasonable number of hours directly attributable to

24  the sanctionable conduct identified in the sanctions order.  "If the parties are able to reach

25  agreement on these two figures, the Court will adopt the parties' agreement, awarding the

26  higher figure but also deeming the lower figure an appropriate alternative in the event the

27  sanctions must be so limited."  (Doc. 1121).

28  / / /

1    With that direction, the parties met to reach an agreement concerning the
2  appropriate fee and contingent fee, but the parties could not agree on the appropriate
3  award, although they could agree to oppose the appointment of a special master to review
4  the records and propose the appropriate fee.  Consequently, the District Court resolved
5  the sanctions amount.  As it previously indicated, the Court made "a contingent award in
6  the event a direct linkage between the misconduct and harm is required."  (Doc. 1125).
7  For this contingent award, the District Court sustained the entirety of Goodyear's code
8  "F" objections and reduced the sanctioned amount by $722,406.52.  (Doc. 1125).  Thus
9  Goodyear presented argument to the District Court identifying each instance of billing
10  that it alleged was not caused by its sanctionable conduct or that of its agents.  In its
11  contingent award, the District Court deducted all such amounts from the award.

12    Goodyear appealed the sanctions award to the Ninth Circuit.  In its opening brief,
13  Goodyear addressed the contingent award, noting that the "contingent award was based
14  solely on the category of Goodyear's objections" and the District Court "did not review
15  whether all other entries for which Plaintiffs were permitted to recover were directly
16  caused by Goodyear's sanctioned acts as required by [Ninth Circuit precedent]."
17  Opening Brief, *Haeger v. Goodyear Tire & Rubber Co.*, No. 12-17718, Ninth Cir., Doc.
18  50 at 11.  In the same opening brief, Goodyear argued, "But not even the contingent
19  award satisfies the causation requirement, as it fails to deduct many other fees and costs
20  that lack a causal connection to Goodyear's conduct."  *Id.* at 12.  Again, Goodyear argued
21  that while it "is entitled to the deductions reflected in the contingent award and those
22  incurred to litigate sanctions, these deductions alone do not begin to cure the court's
23  failure to limit its award to costs directly caused by Goodyear's alleged misconduct."  *Id.*
24  at 26.  In its Reply Brief to the Ninth Circuit, Goodyear again noted that "the contingent
25  award itself does not cure the inadequacies of the district court's failure to insist on
26  causation."  Reply Brief, *Haeger v. Goodyear Tire & Rubber Co.*, No. 12-17718, Ninth
27  Cir., Doc. 78 at 9, n.4.
28  / / /

- 4 -

1    The Ninth Circuit upheld the entire sanctions award because *Chambers v. NASCO,*

2  *Inc.*, 501 U.S. 32, 57 (1991) allowed an award of all attorneys' fees and costs "once the

3  Sanctionees began flouting their clear discovery obligations and engaging in frequent and

4  severe abuses of the judicial system." *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d

5  1233, 1249 (9th Cir. 2016). Because the Ninth Circuit affirmed the entire award, it did

6  not address the contingent award in its decision.

7    Goodyear then appealed the sanctions award to the United States Supreme Court,

8  where it requested review of two questions. First, "Is a federal court required to tailor . . .

9  sanctions . . . to harm directly caused by sanctionable misconduct . . . ?" Second, "May a

10  court award attorney's fees under its inherent powers as sanctions against a client for

11  actions by its attorneys that are not fairly attributable to the client's own subjective bad

12  faith?" (Doc. 1183, Exh. 1). The Supreme Court accepted review of the first question

13  only. (Doc. 1183, Exh. 2). In its decision, the Supreme Court reversed and remanded the

14  sanctions and held that "[a] sanctioning court must determine which fees were incurred

15  because of, and solely because of, the misconduct at issue . . . ." *Goodyear Tire &*

16  *Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1189 (2017). Having dismissed the entire

17  sanctions award, the Supreme Court deferred on whether to accept the contingent award.

18  The Supreme Court insisted that the District Court "reconsider from scratch which fees to

19  shift" because the uncertainty of the application of the right legal rule "points toward

20  demanding a do-over." *Id.* However, the Supreme Court also noted that Goodyear may

21  have "waived any ability to challenge the $2 million [contingent] award." *Id.* Therefore,

22  the "possibility of waiver should . . . be the initial order of business below. If a waiver is

23  found, that is the end of this case. If not, the District Court must reassess fees in line with

24  a but-for causation requirement." *Id.* at 1190.

25    After the Ninth Circuit "remanded to the district court for proceedings consistent

26  with the Supreme Court's opinion," *Haeger v. Goodyear Tire & Rubber Co.*, No. 12-

27  17718, Ninth Cir., Doc. 154, the parties appeared before the District Court for a status

28  conference. The District Court requested briefing on two questions: whether Goodyear is

1 vicariously liable for the acts of its attorneys; and whether Goodyear waived any
2 objection to the District Court's contingent award. (Doc. 1180).

3 **DISCUSSION**

4 **I. Defendant Goodyear's Vicarious Liability**

5 **A. Goodyear's Remaining Liability**

6 The Court first requested the parties to address "whether Goodyear is vicariously
7 liable for the acts of its attorneys" and "whether the attorneys remain personally liable"
8 under the settlement agreement, Ninth Circuit rulings, and the general application of the
9 law. (Doc. 1180 at 15, 22).

10 Notwithstanding various exceptions, a principal is commonly liable for the
11 conduct of its agents. *Hays v. Bank of Arizona*, 57 Ariz. 8, 11 (1941). In Arizona, the
12 rules of agency law generally apply to the attorney-client relationship. *Cahn v. Fisher*,
13 167 Ariz. 219, 221 (App. 1990). Damages "may be assessed against a[ principal] for the
14 actions of its attorney if those actions were taken in furtherance of the [principal's]
15 business and within the scope of the attorney's agency." *Mendoza v. McDonald's Corp.*,
16 222 Ariz. 139, 156 (App. 2009).

17 The District Court's previous decision confirms that Goodyear participated
18 directly in the fraud, and that the National Coordinating Counsel and Local Counsel both
19 acted in furtherance of Goodyear's business and within the scope of the attorney's
20 agency. *Haeger v. Goodyear Tire & Rubber Co.*, 906 F. Supp.2d 938 (D. Ariz. 2012).
21 Specifically, the District Court concluded that Associate General Counsel, Ms. Okey,
22 "was always the final decision maker regarding discovery responses." *Id.* at 943, 978.
23 The District Court found that although Goodyear gave the documents to counsel,
24 "Goodyear is equally responsible" because Goodyear "retained final approval authority
25 on discovery responses," and Goodyear therefore knew it "was not cooperating in
26 discovery and was engaging in bad faith behavior." *Id.* at 978.

27 On review of the original sanctions decision, the Ninth Circuit stated "[a]ny
28 attempt by Goodyear to argue that the District Court abused its discretion and prevented

Goodyear from passing the blame onto its attorney is unavailing. Goodyear 'is deemed bound by the acts of [its lawyers] and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.''" *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1246 (9th Cir. 2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)). Although the Ninth Circuit does not suggest that clients are vicariously liable for all of their attorneys' sanctionable conduct, it does suggest that clients may be held liable for the bad acts of their attorneys when, as here, the client "participated directly in the . . . fraud." *Id.* Accordingly, in this suit, Goodyear is vicariously liable for the conduct of its attorneys.

### B. Basil Musnuff's, Graeme Hancock's, and Fennemore Craig's Liability

Graeme Hancock, an attorney at Fennemore Craig, P.C., and Basil Musnuff both represented Goodyear in the underlying products liability dispute and were parties in the sanctions determination. Both Mr. Musnuff and Fennemore Craig resolved any potential liability in September 2016 when the parties executed an Agreement Covenant Not to Sue and Covenant Not to Execute with Plaintiffs. The agreement with Mr. Musnuff resolved any and all claims against him, including those based on vicarious liability, while preserving claims against Goodyear. The agreement with Fennemore Craig guaranteed that the Haegers would forever refrain from pursuing any and all claims against Fennemore Craig in connection with the original accident or the resulting lawsuits. (Doc. 1184). At the July 13, 2017 hearing, the Plaintiffs' attorney explained that "we've resolved the claims with the law firms . . . so they have no part in these proceedings." (Doc. 1180 at 7).

At the same July 13, 2017 hearing, Spartan indicated that it may pursue additional sanctions due to Goodyear's fraud. Concerning Fennemore Craig's and Mr. Musnuff's role in those potential proceedings, counsel for Spartan stated that if "Goodyear was vicariously responsible for the acts of its attorneys[,]" there would not be "any further need for representatives for either Mr. Hancock, his firm, or Mr. Musnuff and his firm to be here." (Doc. 1180 at 8). Accordingly, Graeme Hancock, Fennemore Craig, P.C., and

1    Basil Musnuff are excused from participating in subsequent proceedings.

2    **II.    Defendant Goodyear's Waiver of Objection to Sanctions Award**

3            In accordance with directives from the Supreme Court and the Ninth Circuit, the

4    Court requested the parties to address whether Goodyear waived any objection to the

5    District Court's alternative sanctions award.  (Doc. 1180 at 15, 22); *Goodyear Tire &*

6    *Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1190 (2017) ("The possibility of waiver should

7    therefore be the initial order of business below").

8            A party waives an argument for review if the party fails to present the argument

9    either before the trial court or in appellate opening briefs. *Jachetta v. U.S.*, 653 F.3d 898,

10   912 (9th Cir. 2011) (citations omitted); *Smith v. Marsh*, 194 F.3d 1045, 1052–53 (9th Cir.

11   1999).  "Ordinarily an appellate court does not give consideration to issues not raised

12   below."  *Hormel v. Helvering*, 312 U.S. 552, 556 (1941).  The litigation process requires

13   trial courts to resolve issues of fact so that litigants have the opportunity to present all

14   relevant evidence before addressing the appellate court.  *Id.*    Courts "will not

15   manufacture arguments for an appellant, and a bare assertion does not preserve a claim,

16   particularly when, as here, a host of other issues are presented for review."  *Greenwood v.*

17   *F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994).

18           Defendant Goodyear repeatedly argued that compensatory fees must be causally

19   connected to the sanctionable misconduct both before and after the District Court

20   provided for a contingent award.  Prior to the contingent award, Goodyear claimed that

21   the fees "should at most, be equal to the reasonable amount of plaintiffs' additional fees

22   that are the proximate result of the sanctionable conduct[,]" and "the amount of fees and

23   costs awarded may not exceed the costs, expenses and attorneys' fees reasonably incurred

24   because of the sanctionable conduct."  (Doc. 1067 at 13–14).

25           But, "whether fees must be causally related to sanctionable conduct, and which

26   specific fees are causally related to the sanctionable conduct, are separate issues."

27   *Haeger v. Goodyear Tire & Rubber Co.*, No. 12-17718, Ninth Cir., Doc. 154 at 6 (M.

28   Smith dissenting).  Although Goodyear regularly raised the issue of causation for the

1    District Court, it object to only   the aforementioned $722,406.52 when it had the
2    opportunity to show which fees suffered from a lack of causation.   (Doc. 1100).
3    Considering the extent of all of its objections, Goodyear did not mistakenly overlook fees
4    when developing its argument to present to the District Court.  As explained above, in
5    such briefing Goodyear specifically set forth a separate category of objections for
6    individual billing entries submitted by Plaintiff to which it objected on the basis that the
7    entry was for services that were not caused by Goodyear's misconduct.  Goodyear often
8    made several different categories of objections for the same billing entry.  The District
9    Court  forewarned the parties that it would grant a contingent award limited to fees
10   "incurred as a direct result of sanctionable conduct," (Doc. 1121), and asked for guidance
11   to make this decision, but Goodyear did not present any additional objections to fees or
12   costs beyond those that it had already made.  The District Court then granted Goodyear
13   the entirety of its causation objections in its contingent award.  Goodyear's footnote that
14   its specific objections to certain fees should not be construed "as waiving the impropriety
15   of this Court's Order requiring payment of all fees from November 2006 onward as
16   opposed to incremental fees caused by Goodyear's alleged discovery misconduct[,]"
17   (Doc. 1103 at 1–2, n.1), was meant to preserve an argument in favor of incremental fees
18   over an award of all fees.  The footnote did not preserve a second opportunity to argue
19   which incremental fees were appropriate.

20          After the contingent award, Goodyear argued at the Ninth Circuit that "not even
21   the contingent award satisfies the causation requirement, as it fails to deduct many other
22   fees and costs that lack a causal connection to Goodyear's conduct."  Opening Brief,
23   *Haeger v. Goodyear Tire & Rubber Co.*, No. 12-17718, Ninth Cir., Doc. 50 at 12.
24   Goodyear noted that the "contingent award was based solely on the category of
25   Goodyear's objections" and the District Court "did not review whether all other entries
26   for which Plaintiffs were permitted to recover were directly caused by Goodyear's
27   sanctioned . . . ."  Opening Brief, *Haeger v. Goodyear Tire & Rubber Co.*, No. 12-17718,
28   Ninth Cir., Doc. 50 at 11.  This argument, however, was never made to the District Court

- 9 -

in the briefing on the contingent award. It is a new argument made for the first time on appeal. Such arguments are waived. *Jachetta v. U.S.*, 653 F.3d 898, 912 (9th Cir. 2011) (citations omitted); *Smith v. Marsh*, 194 F.3d 1045, 1052–53 (9th Cir. 1999). "Ordinarily an appellate court does not give consideration to issues not raised below." *Hormel v. Helvering*, 312 U.S. 552, 556 (1941).

In the Ninth Circuit's recent remand to the District Court, Judge Smith stated that "the Haegers specifically raised this theory of waiver when the case was first before us, and Goodyear responded." *Haeger v. Goodyear Tire & Rubber Co.*, No. 12-17718, Ninth Cir., Doc. 154 at 5 (M. Smith dissenting). Judge Smith noted that in its Response and Objections to Plaintiffs' Application for Attorneys' Fees and Costs, Goodyear identified only certain requests as "wholly distinct from the issues at hand." *Id.* "Nowhere in this brief did Goodyear assert a causation challenge to the remaining costs and fees requested by the Haegers[,]" and thus, "Goodyear failed not only to raise the issue of whether the remaining $2 million in fees requested by the Haegers were causally related to Goodyear's sanctionable conduct before the district court, but also to preserve it for appeal." *Id.* at 5–6.

In December 2012, the Plaintiffs presented Goodyear with its requested fees and costs. (Doc. 1082). Goodyear, operating under its understanding of the appropriate causation standard, objected to certain requests as lacking a causal connection to the sanctionable conduct. (Doc. 1100). Even though the Supreme Court accepted Goodyear's argument for the appropriate causation standard, Goodyear would like a do-over to reapply its original understanding of the rule. To allow Goodyear to follow this course would "encourage the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the trial court pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error." *Freytag v. C.I.R.*, 501 U.S. 868, 898 (1991) (Scalia, J., concurring in part and concurring in the judgment). Accordingly, the Court finds that Goodyear waived any additional objections to the requested fees for lack of a causal connection to the sanctionable conduct.

# CONCLUSION

For the reasons stated above, the Court concludes that Goodyear is vicariously liable for the acts of its attorneys and has waived any additional objections to the contingent sanctions award.

**IT IS HEREBY ORDERED** that the parties shall address the court concerning the remaining amount of the contingent sanctions award to be imposed against Defendant Goodyear, as well as any other remaining issues.

**IT IS HEREBY ORDERED** setting a Status Conference for **March 13, 2018** at **9:00 a.m.** in Courtroom 602, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington, St., Phoenix, Arizona 85003-2151.

Dated this 7th day of March, 2018.

Honorable G. Murray Snow
United States District Judge