```
                    UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF ARIZONA
                     _____

Leroy Haeger, et al.,          )
                               )
            Plaintiffs,        )    2:05-cv-2046-GMS
                               )
       vs.                     )    Phoenix, Arizona
                               )    March 13, 2018
Goodyear Tire & Rubber         )
Company, et al.,               )    9:03 a.m.
                               )
            Defendants.        )
_____)



         BEFORE:   THE HONORABLE G. MURRAY SNOW, JUDGE


             REPORTER'S TRANSCRIPT OF PROCEEDINGS


                       STATUS CONFERENCE
```

Official Court Reporter:
Charlotte A. Powers, RMR, FCRR, CRR, CSR, CMRS
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 40
Phoenix, Arizona  85003-2151
(602) 322-7250

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
                     A P P E A R A N C E S


  For the Plaintiffs:

              Kurtz Law Firm
              By: DAVID L. KURTZ, ESQ.
              7420 E Pinnacle Peak Road, Suite 128, Building D
              Scottsdale, AZ  85255

  For the Defendant Goodyear Rubber & Tire Company:

              Squire Patton Boggs
              By: KERRYN LEIGH HOLMAN, ESQ. and
              1 East  Washington, Suite 2700
              Phoenix, AZ  85004

              and

              Porter Wright Morris & Arthur LLP – Cleveland, OH
              By: JILL G. OKUN, ESQ.
              950 Main Street, Suite 500
              Cleveland, OH  44113


  For the Defendant Spartan Motors:

              Lisa G Lewallen PLLC
              By: LISA GAY LEWALLEN, ESQ.
              PO Box 33430
              Phoenix, AZ  85067
```

**UNITED STATES DISTRICT COURT**

```
 1                    P R O C E E D I N G S
 2              (Proceedings resume at 9:03 a.m.)
 3          THE COURT:  Please be seated.
 4          COURTROOM DEPUTY:  This is CV05-2046, Haeger, et al.
 5   vs. Goodyear Tire & Rubber Company, et al., on for status
 6   conference.
 7          Counsel, please announce your appearance.
 8          MR. KURTZ:  Good morning, Your Honor.
 9          David Kurtz for the Haeger family.
10          THE COURT:  Good morning.
11          MS. LEWALLEN:  Good morning, Your Honor.
12          Lisa Lewallen for Spartan Chassis.
13          THE COURT:  Good morning.
14          MS. HOLMAN:  Good morning, Your Honor.
15          Kerryn Holman, local counsel for Goodyear.
16          THE COURT:  Good morning.
17          MS. OKUN:  Good -- good morning, Your Honor.
18          This is Jill Okun on the phone, counsel for Goodyear.
19          THE COURT:  Do we have anyone else on the phone?
20          MS. HOLMAN:  No, Judge.
21          MS. OKUN:  I don't believe so.
22          THE COURT:  All right.  Thank you.
23          So where are we at?  Is this going to be -- what do we
24   have left, whether Haeger and Spartan want to reopen the
25   record?
```

1             MR. KURTZ:  Yes, Your Honor.
2             The -- where we are is when we were last before the
3    Court, as you may recall, I had requested an opportunity to
4    provide supplemental evidence to the Court in the form of a
5    filing with the Court.
6             The Court determined we wanted to get rid -- address
7    the waiver issue and the question of Goodyear -- of Goodyear's
8    vicarious liability.  Last week Your Honor issued its order on
9    those and set this status -- status conference.
10            The argument today that I'd like to present to the
11   Court is an overview of the history of new evidence developed
12   of which Judge Silver was never aware in the course of the
13   subsequent state proceedings regarding Goodyear's fraud, which
14   will establish but-for causation in two different ways
15   entitling Haeger's to all the fees, not just the 2 million that
16   the Supreme Court raised, but the 2.7 million Judge Silver
17   originally ordered, and additional fees for a fraudulent
18   evidentiary presentation that boasts to the Ninth Circuit and
19   the Supreme Court of the United States.
20            We believe that record will show not only can I prove
21   that there was a scheme to defeat a valid claim that permeated
22   the entirety of the proceedings before Judge Silver, but I can
23   also prove that when Goodyear finally disclosed the very
24   evidence I requested in the first request for production -- I
25   got it in 2017 -- Goodyear lied about what it was to Judge

```
1    Silver.  When I got it, the case settled within days.
2            And so that's the presentation I want to make this
3    morning, Your Honor.
4            I did note when I -- in fact, Ms. Okun told me, I
5    think, on Friday -- that Your Honor had another pretrial set
6    today, following this in 30 minutes, and I went through my
7    presentation this morning, just my presentation, it takes about
8    20 minutes, Judge.  And it's a big record.  I'm sorry you're
9    new to it.  But your newness to it also requires me to be
10   reasonably detailed as to the nature of what I can show and
11   to -- so the Court can appreciate contextually what actually
12   happened and how that deception unfolded.
13           I know that Ms. Lewallen has issues about Spartan's
14   fee entitlement that she needs to present, and certainly
15   Goodyear needs to have an opportunity to provide their position
16   and, you know, of course, my reply.  It's not going to happen,
17   Judge, in 30 minutes.  I'm pleased to proceed with the
18   presentation, but I think it's really important that Your Honor
19   have the benefit of these details because -- or you could -- or
20   I can do it another way, Judge, which I'm pleased to do.  I can
21   simply provide you the supplemental brief with the supporting
22   documents, let Goodyear respond to it, and then the Court can
23   decide which way we go from there regarding the Haegers'
24   compensatory fee entitled.
25           THE COURT:  Well, I have to say when I scheduled the
```

| | |
|---|---|
| 1 | status conference, I didn't anticipate an oral presentation.  I |
| 2 | did anticipate the possibility that you would still want me to |
| 3 | reopen the record.  I just want to make sure you still wanted |
| 4 | me to reopen the record, and that Spartan might do the same. |
| 5 | What I had anticipated doing, but apparently did not |
| 6 | communicate very well is, if you still wanted to reopen the |
| 7 | record, I would let you file briefs to that extent and let |
| 8 | Goodyear have a chance to respond and make a determination that |
| 9 | way. |
| 10 | If you want to do some sort of summary presentation |
| 11 | right now, I'll hear it.  But as you -- as you have indicated, |
| 12 | because I'd only really wanted to have a status conference and |
| 13 | set a briefing schedule, if that was what was indicated, that's |
| 14 | all I had in mind. |
| 15 | MR. KURTZ:  Sure. |
| 16 | THE COURT:  So, you would still like me to open the |
| 17 | record? |
| 18 | What's Spartan's position? |
| 19 | MS. LEWALLEN:  Your Honor, Spartan concurs with the |
| 20 | plaintiff's position.  We would like the opportunity to |
| 21 | supplement the record so that you have a working understanding |
| 22 | of the nature and the extent of the deception, not only upon |
| 23 | the plaintiffs and Judge Silver, but upon my client equally. |
| 24 | And thereafter, I think it's the only appropriate point when |
| 25 | you can then thoughtfully consider the entitlement for our |

```
1    fees, and the extent of them.
2            THE COURT:  What does Goodyear have to say?
3            MS. HOLMAN:  Your Honor --
4            MS. OKUN:  Your Honor --
5            MS. HOLMAN:  -- Jill Okun on the phone will be
6    speaking.
7            MS. OKUN:  If -- if I may, Your Honor, it was also my
8    understanding that this was to be just a status conference and
9    not an oral argument, so I don't have any kind of Folsom
10   Presentation.
11           I -- I would like to say, however, that in terms of
12   plaintiff expanding the record, I believe one, as the Supreme
13   Court noted and -- and you reiterated, if waiver was found, the
14   case is over.  The record was fixed, and that should be the end
15   of it.
16           I would also add that there is a release before Your
17   Honor that Mr. Kurtz put in the record which was a release of
18   the fraudulent settlement case in which the plaintiffs released
19   all claims, all actions, all attorney's fees, with the sole
20   exception of the attorney fee claims currently pending before
21   the U.S. Supreme Court.  That is what has now been resolved,
22   and everything else has been released.
23           So from Goodyear's perspective, the -- other than
24   calculating an amount, there should be nothing further.  It's
25   all been released.
```

1         THE COURT:  I'm not even sure I need to calculate an
2    amount.  Didn't Judge Silver already do that?
3         MS. OKUN:  Well, there -- there are issues, Your
4    Honor, with regard to the amounts paid by the attorneys --
5         THE COURT:  Oh.
6         MS. OKUN:  -- and the appropriate setoffs and
7    calculating the appropriate interest.  And although I had a
8    preliminary discussion with Mr. Kurtz, we -- we didn't get very
9    far in that discussion.
10         THE COURT:  Well, here is what I propose.
11         Mr. Kurtz, how long is it going to take you to get
12    your -- and I don't mean to leave anybody out -- how long is it
13    going to take plaintiffs to get their pleading on file, arguing
14    that I should reopen the record?  And then I'm going to allow
15    Goodyear to make whatever arguments they want with respect to
16    the release that has been signed and other matters as they may
17    pertain to the two different claimants that want to reopen the
18    record.
19         MR. KURTZ:  The -- if the brief is limited to why the
20    record should -- this -- this is my challenge, Judge.  Part of
21    the -- the answer is, I can do it reasonably promptly; 10 days,
22    two weeks, whatever it pleases the Court.
23         Part of the presentation about -- you know, when the
24    record is reopened, the details will be reasonably -- in fact,
25    they will be exceptionally precise and supported by documents,

1    much like a statement of facts.
2            Now, in the argument, in order for me to share with
3    the Court why the record needs to be reopened, it will at least
4    require me to reference some of this concealed evidence in the
5    record that was before Judge Silver.  So there's some overlap
6    in that, and I don't want to -- I want to be sure that the
7    Court -- that I follow the Court's instruction and intent.  I
8    can't educate the Court without the provision of some
9    supporting documents.
10           THE COURT:  How many pages do you need to do what you
11   would like to do?
12           MR. KURTZ:  Pardon me?
13           THE COURT:  How many pages do you need to do what you
14   would like to do?
15           MR. KURTZ:  Having not written it, Your Honor, for
16   purposes of just advocating to reopen the record, my guess is
17   that I ought to be able to do it within the 17-page limit
18   generally contemplated by the rules, as I understand them, with
19   supporting exhibits.  The purpose of it would be simply to give
20   not all the details, because it's just too much, but to give
21   the Court the more fundamental ones which show the depth of the
22   fraud on Judge Silver and -- and its impact on the fees.
23           THE COURT:  Well, I don't want to encourage longer
24   pleadings, but this is what I'll offer you.
25           MR. KURTZ:  Yes, sir.

1   THE COURT:  If you feel like you need to set forth in
2   great detail what you assert to be fraud on Goodyear's part --
3   additional fraud, other than that that was found -- I've got to
4   say, as Goodyear's counsel indicated, it seemed to me that
5   there was a pretty broad release signed in the state court
6   action.  In order for me to overcome that release, you're going
7   to have to convince me that there was some sort of fraud in
8   entering into that as well.
9   So I guess what I'm saying is, put forth your best
10  case for that.  If it takes you more pages, I'll give you more
11  pages.  But what I will do then is -- I would anticipate taking
12  this in two stages, because I'm not sure that I'm going to
13  reopen the record.  If I do reopen the record and you have
14  pretty much already explained to me the basis on which there is
15  fraud, I'm not going to have you re-brief the facts.  I would
16  just have you set forth your argument as to what amount you
17  claim you are owed and why you were owed it, if, in fact, I do
18  reopen the record on that second round of briefing.
19  Is that acceptable to you?
20  MR. KURTZ:  It's acceptable -- acceptable to me, Your
21  Honor, and I appreciate the Court's approach to it.
22  In that situation, I would think it would probably
23  take 30 days to do it the right -- to do it the right way to
24  the Court's satisfaction.  And what I would suggest on the page
25  limitation is when it's written to -- we can do it one of two

1  ways.  I would try to do it in 30 pages or less; or whenever it
2  gets completed, to simply tell the Court how long it is and
3  request the authority to file that length of a brief.
4         THE COURT:  Yes.  And, please, even though I'm opening
5  up the page limit, don't...
6         MR. KURTZ:  Judge, I understand.  Sadly, I've lived
7  through this for 15 years, and I -- there's no one more tired
8  of being through this than me, other than perhaps Judge Silver.
9  So I apologize in advance.  I just can't make --
10        THE COURT:  No, Judge Silver isn't --
11        MR. KURTZ:  -- something so complex --
12        THE COURT:  Yeah.
13        MR. KURTZ:  -- essentially simple.
14        THE COURT:  Judge Silver isn't tired of it anymore.
15        Can you do it in 30 days as well?
16        MS. LEWALLEN:  Yes, Your Honor, we can.
17        And I would just like to note that the arguments from
18 Goodyear regarding waiver and release have absolutely no
19 application to my client.
20        THE COURT:  I do understand that your client is in a
21 different circumstance and was not involved in a waiver and
22 release there, but it does seem to me that there may be
23 different issues that relate to your client, some of which were
24 meted out in the last briefing.  For example, what is the
25 effect that your client didn't appeal?  Does that --

```
1                MS. OKUN:  Correct.
2                THE COURT:  Does that foreclose any ability to reopen
3    the record now?  I don't pretend that I have formed an opinion
4    on that, but I did note it was an issue.  And so even though
5    you're in a little bit different situation, it does seem to me
6    that your different situation poses different issues, as well.
7                MS. LEWALLEN:  And so what limitations should we
8    exercise in our filing?
9                THE COURT:  The same.
10               MS. LEWALLEN:  Would you like -- would you like a
11   separate statement of facts that Mr. Kurtz and I could present
12   in a joint fashion?
13               THE COURT:  If you can present it jointly, that would
14   be delightful.
15               MS. LEWALLEN:  Okay.
16               THE COURT:  If you can't present it joint -- if you
17   can't present it jointly, I would appreciate at least
18   coordination so you're not repeating.  You can just refer --
19   reference one or the other's statement of facts to the extent
20   that you adopt them, as well.
21               MS. LEWALLEN:  We'd be fine with filing something
22   jointly.  If we get 30 days, I think we have time to do that.
23               Would you agree, Dave?
24               MR. KURTZ:  Yeah, that's -- that's fine, Your Honor.
25               THE COURT:  And then Goodyear, how long do you want to
```

1   file your response?

2              MS. OKUN:  Your -- Your Honor, I would like at least

3   30 days.

4              I have to apologize.  I'm not 100 percent clear on

5   what this briefing is going to entail.  Is it going to be

6   focused on the appropriateness of opening the record or the

7   full substance?  I think Mr. Kurtz sort of went both ways, and

8   I'm not 100 percent sure which way it ended.

9              THE COURT:  Well, and frankly, that's less his fault

10  than it is mine.

11             What I'm going to be interested in is whether I reopen

12  the record at all.  That is what I'm going to be interested in.

13  If, in fact, I decide -- if I --

14             MS. OKUN:  Okay.

15             THE COURT:  If I, in fact, decide to reopen the

16  record, I will then consider how best to proceed.  Are we going

17  to need evidentiary hearings?  Has anybody thought about that?

18  Seems to me that we might.  But if we don't, then I'll just

19  have a second round of briefing as to whether I should impose

20  sanctions and to what extent.  But it strikes me that there

21  may, in fact, be issues of fact.  There may not be.  I don't

22  know that at this point.

23             So the first round, even though I've opened up -- I've

24  opened up the page limits to allow what I will call the --

25  loosely call the plaintiffs here to set forth their best-case

```
 1    scenario as far as fraud or whatever else that gets them out of
 2    what would otherwise be bars to reopening the record.  I just
 3    want them to know, I'm giving them the chance to tell me their
 4    whole story, and so I'm opening up the page limits for that
 5    purpose.
 6              Similarly, I'll open up the page limit for you to
 7    respond.  But I am not inviting you, as I am not inviting them,
 8    to be other than succinct in putting forth whatever it is that
 9    you feel is best responds to what they have to tell me.
10              MS. OKUN:  Understood, Your Honor.
11              THE COURT:  So I'll give them 30 days, and I'll give
12    you 30 days after they file their motions.  And then I'm going
13    to just give the normal time for reply because it's time that
14    we move this along, for all kinds of reasons.
15              MS. LEWALLEN:  Your Honor, a question, please.
16              THE COURT:  Yes.
17              MS. LEWALLEN:  For clarification, you -- I believe you
18    instructed Mr. Kurtz to limit his motion to 30 pages.  Shall
19    Spartan file theirs within the normal 17-page limit, which I
20    believe would be sufficient?
21              THE COURT:  That would be delightful.
22              MS. LEWALLEN:  Thank you.
23              THE COURT:  Anything else?
24              MR. KURTZ:  Nothing further, Your Honor.
25              Thank you.
```

```
 1            THE COURT:  Anything from Goodyear?
 2            MS. HOLMAN:  No.
 3            Thank you, Your Honor.
 4            THE COURT:  Spartan?
 5            MS. LEWALLEN:  No, sir.
 6            MS. OKUN:  Thank you, Your Honor.
 7            THE COURT:  Thank you all.
 8                (Proceedings in recess at 9:20 a.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**C E R T I F I C A T E**

I, CHARLOTTE A. POWERS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 19th day of March, 2018.

s/Charlotte A. Powers
Charlotte A. Powers, RMR, FCRR